**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

ALBERT LAMONT HECTOR,
    *Defendant-Appellee.*

No. 05-50270

D.C. No.
CR-04-00860-DDP

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

ALBERT LAMONT HECTOR,
    *Defendant-Appellee.*

No. 05-50404

D.C. No.
CR-04-00860-DDP

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
September 11, 2006—Pasadena, California

Filed January 25, 2007

Before: Cynthia Holcomb Hall, M. Margaret McKeown, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge McKeown

**COUNSEL**

Debra Wong Yang, Thomas P. O'Brien, and Fred A. Rowley, Jr., United States Attorneys, Los Angeles, California, for the plaintiff-appellant.

Dean R. Gits and Davina T. Chen, Federal Public Defenders, Los Angeles, California, for the defendant-appellee.

**OPINION**

McKEOWN, Circuit Judge:

Unlike many Fourth Amendment cases, here no one disputes that there was a valid search warrant issued by a state court judge on a showing of probable cause. Instead, the challenge is focused on whether there is a constitutional right under the Fourth Amendment to be presented with a copy of the search warrant at the time of the search, whether a defendant's probationary status affects this analysis, and whether

the claimed constitutional violation merits suppression of the seized evidence.

Albert Lamont Hector was found guilty by a jury of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841 (Count One); possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count Two); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Three). Following the trial, the district court granted Hector's motion to suppress drug and firearms evidence seized from his residence, citing the police's failure to serve him with a copy of the search warrant. The district court denied the government's motion for reconsideration of the suppression order and granted Hector a new trial on Counts One and Three based on its suppression ruling. The district court also granted Hector's motion for a judgment of acquittal on Count Two due to insufficient evidence that the gun was used "in furtherance" of drug trafficking. The government appeals the district court's post-trial orders.

After the district court's ruling, the Supreme Court decided *Hudson v. Michigan*, 126 S. Ct. 2159 (2006), holding that suppression of evidence is not an appropriate remedy for a constitutional violation that was not the "unattenuated but-for cause" of obtaining the disputed evidence. The rationale of that decision applies with equal force in this case. Without deciding whether the failure to provide a copy of the warrant was a constitutional violation, we conclude that even if it were, it was not a "but-for cause" of seizure of the evidence. As to the sufficiency of the evidence challenge, a reasonable trier of fact could easily find that the gun was used "in furtherance" of drug trafficking. Thus, we reverse both the grant of a new trial on Counts One and Three, and the judgment of acquittal on Count Two.

## BACKGROUND

On May 21, 2004, an officer from the Los Angeles Police Department ("LAPD") arranged for an informant to make a

controlled drug purchase from Hector at his Los Angeles apartment. Using a pre-identified twenty dollar bill, the informant went into the apartment and purchased .49 grams of rock cocaine. Based upon this drug purchase, on May 28, 2004, the officer obtained a state court warrant to search Hector's apartment for cocaine and related paraphernalia, including currency and firearms. It is undisputed that the warrant was based on probable cause, supported by a sworn affidavit, and on its face, sufficiently particular in describing the place to be searched and the items to be seized.

On June 2, 2004, before the warrant was executed, the LAPD officers arranged for a second informant to make another controlled purchase at the same address. The informant went to the apartment and purchased two pieces of rock cocaine from a man he later identified as Hector. Soon after, several LAPD officers and two federal agents knocked on the apartment door and announced themselves. Believing that they had exigent circumstances due to concerns about destruction of evidence, the officers pried open the door. Upon entering the apartment, they discovered Hector alone in the living room, lying face-down on the floor.

At some point during the search, the officers presented Hector with a "Search Warrant Notice of Service." The Notice of Service did not list either the address of the premises to be searched or the items to be seized.[1] Hector never

---

[1]The Notice of Service stated, in part:

To Whom it may concern:

1.   These premises have been searched by the peace officers of the Los Angeles Police Department pursuant to a search warrant issued on 5/28/04 by the Honorable Judge Jacob Adajian, Judge of the Superior Court, Los Angeles Judicial District.

2.   The search was conducted on 6/2/04. A list of the property seized pursuant to the search warrant is provided on the attached Los Angeles Police Department receipt for property taken into custody.

asked to see a copy of the warrant. After he was booked, Hector received a property receipt indicating the items that had been seized. The Notice of Service is not a warrant, and the officers never presented Hector with a warrant during the search. Police department policy did not require the officers to serve the actual warrant.[2] Hector first received the search warrant as part of the government's discovery obligations.

The officers discovered the following items during the search: a loaded Glock .45 caliber handgun underneath a futon couch in the living room; a magazine and ammunition (that matched the Glock) beneath a mattress in the bedroom; a bag containing approximately 6.46 grams of cocaine base hidden inside a child's boxing glove located in a bathroom drawer; $856 in a kitchen drawer, including the pre-marked $20 bill that the police had given to one of the informants; $3,505 in small bills at the bottom of a laundry tub located in the bedroom; and a gas bill bearing Hector's name and the apartment's address.

At the time of the search, Hector was on state probation under terms that required him to "submit [his] person and property to search or seizure at any time of the day of night by any law enforcement officer or by probation officer with or without a warrant." The officers were unaware of Hector's probationary status when they searched his apartment.

---

[2]The Search Warrant Manual issued by the Office of the District Attorney in the County of Los Angeles states, in relevant part:

> After entry is made, the officer should show the original search warrant to the occupant and give him a copy of the warrant. However, there is no requirement that the search warrant be exhibited to the occupant or that a copy of the warrant be given to the occupant. There is also no requirement that the search warrant be present at the location to be searched. . . . If no one is present at the premises being searched, a copy of the warrant should be left in a conspicuous place within the location. Alternatively, officers may leave a "SEARCH WARRANT: NOTICE OF SERVICE" form at the location rather than leave a copy of the warrant.

At trial, the government presented the testimony of law enforcement officers, who described the search, including the items seized, their locations, and the layout of the apartment. An officer testified that the loaded handgun was found underneath the futon in the living room, about six feet from where Hector was found lying on the ground, and that the futon had to be lifted to see the gun; the apartment was less than 700 square feet and contained one bedroom with one bath; the living room was only three or four steps away from both the kitchen and the bathroom; and it would only take four or five seconds to walk from the front door to the farthest point in the living room.

After a four-day trial, the jury returned a guilty verdict on all three counts. Hector renewed his motion to suppress all evidence gathered as a result of the search. The district court granted the motion and held that the officers' failure to serve Hector with the search warrant violated the Fourth Amendment and required suppression of the evidence.

In its motion for reconsideration of the suppression ruling, the government argued for the first time that the officers did not need a search warrant because Hector was on state probation at the time of the search, and thus he had a diminished expectation of privacy. The district court denied the motion, reasoning that the officers' conduct could not be retroactively justified by a fact that was unknown to the officers at the time of the search.

Hector also filed a motion pursuant to Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal on the 18 U.S.C. § 924(c) conviction (possession of a firearm in furtherance of drug trafficking). The district court granted the motion because, in its view, the government's evidence at trial failed to show more than mere presence of a gun at the scene of drug trafficking activity.

ANALYSIS

## I. SUPPRESSION OF EVIDENCE

[1] In granting Hector's motion to suppress, the district court concluded that Hector's Fourth Amendment rights were violated because the police officers failed to provide him with a copy of the search warrant. On its face, the Fourth Amendment does not require that a copy of the warrant be served on the person whose premises are being searched.[3] *United States v. Banks*, 540 U.S. 31, 35 (2003) ("The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization.").[4]

The district court relied on the then newly-issued decision in *United States v. Martinez-Garcia*, 397 F.3d 1205, 1212 n.3 (9th Cir. 2005) (noting that a search "may be presumptively unreasonable if officers fail entirely to serve a sufficient warrant at any time before, during or immediately after a search of a home."). The key premise underlying the presentation requirement is that "[a]bsent such presentation, individuals would stand [no] real chance of policing the officers' conduct." *United States v. Grubbs*, 377 F.3d 1072, 1079 (9th Cir. 2004) (*Grubbs I*)) (internal quotation marks and citation omitted). However, after the district court granted Hector's motion to suppress, the Supreme Court decided *United States v. Grubbs*, 126 S. Ct. 1494 (2006) (*Grubbs II*), which specifi-

---

[3]The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV.

[4]Neither party challenges the district court's conclusion that Federal Rule of Criminal Procedure Rule 41, governing service of warrants, is inapplicable in this case because the search was not "federal in character."

cally rejected the policing rationale. It is not clear whether *Grubbs II* overrules the Ninth Circuit's precedent on the requirement to present a copy of the warrant to the owner of the premises at the time of the search. But we need not resolve this issue here, as we rely on *Hudson* to hold that regardless of whether the failure to serve a copy of the warrant was a violation of the Fourth Amendment, the exclusionary rule should not be applied in this case.[5]

**[2]** In *Hudson*, the police officers had a valid search warrant for drugs and firearms, but entered Hudson's home in violation of the Fourth Amendment's knock-and-announce rule. According to the Supreme Court, the violation did not warrant suppression of the evidence obtained from the search because the knock-and-announce violation was not the unattenuated but-for cause of obtaining the evidence. In articulating this principle, the Supreme Court first explained: "Whether [the violation] had occurred *or not*, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house." *Hudson*, 126 S. Ct. at 2164 (emphasis in original).

The Court went on to observe that even if the constitutional violation "could be characterized as a but-for cause of discovering what was inside," the exclusionary rule would not apply if the causal connection was "attenuated"—i.e., if the causal connection was remote or if "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id.* The Court concluded that the exclusionary rule was inapplicable because the knock-and-announce requirement is aimed at pro-

---

[5]Given our holding with respect to the exclusionary rule, we also need not reach the question of whether the failure to serve the warrant was constitutional in light of Hector's probation status. *See Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2005) (holding that "police officers cannot retroactively justify a suspicionless search and arrest on the basis of an after-the-fact discovery of an arrest warrant or a parole condition").

tection of human life and limb, property, and privacy, not "the shielding of potential evidence from the government's eyes." *Id.* at 2165.

Finally, the Court noted that "[q]uite apart from the requirement of unattenuated causation, the exclusionary rule has never been applied except where its deterrence benefits outweigh its substantial social costs." *Id.* at 2165 (internal quotation marks and citation omitted). The Court deemed the deterrence benefit insignificant because the police had little incentive to commit the forbidden act: "[I]gnoring knock-and-announce can realistically be expected to achieve absolutely nothing except the prevention of destruction of evidence and the avoidance of life-threatening resistance by occupants of the premises—dangers which, if there is even 'reasonable suspicion' of their existence, *suspend the knock-and-announce requirement anyway.*" *Id.* at 2166 (emphasis in original).

**[3]** Here, as in *Hudson*, given that a valid search warrant entitled the officers to retrieve drugs and firearms in the apartment, "[r]esort to the massive remedy of suppressing evidence of guilt is unjustified." *Id.* at 2168; *see also Stenfonek*, 179 F.3d 1030, 1035 (7th Cir. 1999) ("The idea that sanctions should be proportioned to the gravity of the wrong is fundamental, and it has become an important element of the jurisprudence of the Fourth Amendment."). Regardless of whether the police officers had actually shown Hector the search warrant, they would have executed it and recovered the drugs and firearms inside his apartment. Thus, the acquisition of the evidence can hardly be characterized as a "fruit of the fact" that the officers failed to present the warrant. *See Hudson*, 126 S. Ct. at 2169.

The causal connection between the failure to serve the warrant and the evidence seized is highly attenuated, indeed nonexistent, in this case. After the decision in *Grubbs II*, the only legitimate interest served by the presentation of a warrant appears to be the one we adopted in *United States v. Gantt*,

194 F.3d 987, 1004 (1999): "The purpose of handing the occupant . . . the warrant [under Rule 41(d)], like that of the 'knock and announce' rule is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate" (quoting *Stefonek*, 179 F.3d at 1035) (internal quotation marks omitted). This interest does not implicate the seizure of evidence described in the search warrant nor would it be vindicated by suppression of the evidence seized.

Finally, the social costs of excluding relevant evidence obtained pursuant to a valid search warrant are considerable. In contrast, the deterrent benefit associated with suppressing the evidence is relatively small in the case of failure to present a copy of the warrant. As noted in *Hudson*, "[t]he value of deterrence depends upon the strength of the incentive to commit the forbidden act." 126 S. Ct. at 2166. Assuming, as here, that a valid warrant has been obtained, the decision to present or not present the warrant bears little on the validity of the search. Indeed, the officers' failure to present the warrant to Hector was not unreasonable in light of the department policy that explicitly stated that no presentation of the warrant was required. *See supra* note 2.

**[4]** In light of the rationale of the exclusionary rule and the considerations set out by the Supreme Court in *Hudson*, we conclude that suppression was not an appropriate remedy in this case, and that the district court should have granted the government's motion for reconsideration. The district court's order for a new trial on Counts One and Three should be reversed.

## II.  JUDGMENT OF ACQUITTAL ON COUNT TWO

We review de novo the district court's grant of Hector's motion to acquit under Rule 29(c) to determine whether "viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v.*

*Ching Tang Lo*, 447 F.3d 1212, 1221 (9th Cir. 2006) (internal quotation marks and citation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**[5]** The government contends that there was sufficient evidence to support Hector's conviction for violation of 18 U.S.C. § 924(c), which provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, *in furtherance* of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime . . . be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c) (emphasis added). To prove this offense, the government must show that (1) Hector participated in a drug trafficking crime, (2) Hector possessed the firearm, and (3) Hector's possession of the firearm was "in furtherance" of the drug crime. *See United States v. Rios*, 449 F.3d 1009, 1012 (9th Cir. 2006). Hector contests only the third element—whether the government had established that his possession of the firearm was "in furtherance" of the drug crime.

Interpretation of the "in furtherance" requirement has spawned considerable case law. The bottom line is that it is a fact-based inquiry into the nexus between the possession of the firearm and the drug crime.

The "in furtherance" language stems from a 1998 amendment to § 924(c). The Sixth Circuit in *United States v. Mackey* offered a helpful summary of the legislative history:

> The provision of § 924(c) that criminalizes "possession" of a gun "in furtherance of" certain crimes was added by Congress in 1998 in response to the Supreme Court's decision in *Bailey [v. United*

*States,* 516 U.S. 137 (1995)]. That case concerned the prior version of the statute, which did not mention possession but criminalized using and carrying a firearm "during and in relation to" crimes of violence or drug offenses. 18 U.S.C. § 924(c)(1) (1994). The Court of Appeals for the District of Columbia Circuit had affirmed a conviction for "use" of a weapon "during and in relation to" a drug crime based on a gun locked in the trunk of defendant's car at the time of his arrest. The Supreme Court rejected such a broad interpretation of "use" and held that "use" required some active employment.

The legislative history of Congress' response to this decision indicates that Congress intended the "in furtherance of" limitation to be a higher standard than "during and in relation to," which continues to modify the use and carry prongs of the statute.

265 F.3d 457, 461 (6th Cir. 2001) (internal citations omitted).

The court in *Mackey* went on to quote the following language from the Judiciary Committee Report:

The Committee recognizes that the distinction between "in furtherance of" and "during and in relation to" is a subtle one, and may initially prove troublesome for prosecutors. Nevertheless, the Committee believes that "in furtherance of" is a slightly higher standard, and encompasses the "during and in relation to" language. . . .

The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must

illustrate, through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

*Id.*

Following the amendment, scores of § 924(c) cases have been decided in every circuit. As the Seventh Circuit summarized in *United States v. Castillo*, 406 F.3d 806, 813 (7th Cir. 2005), "our sister circuits have reviewed this language and have come to fundamentally the same conclusion":

> As the circuits note, the natural meaning of "in furtherance of" is "furthering, advancing or helping forward." The negative implication of this definition is that the mere presence of a weapon at the scene of a drug crime, *without more*, is insufficient to prove that the gun was possessed "in furtherance of" the drug crime.

*Id.* at 814 (internal citations omitted) (emphasis in original).

**[6]** Thus, the courts generally look to see if the government has shown a *specific* "nexus" between the *particular* firearm and the *particular* drug crime at issue. In practical terms, this means the government must "present a viable theory as to how the gun furthered the drug possession or distribution." *Id.* at 815.

Although the Fifth Circuit has developed a non-exclusive list of factors in *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000), we have concluded that this approach is not particularly helpful in close cases. *See, e.g.*, *United States v. Krouse*, 370 F.3d 965, 968 (9th Cir. 2004).

**[7]** In *Krouse*, we held that "sufficient evidence supports a conviction under § 924(c) when facts in evidence reveal a nexus between the guns discovered and the underlying

offense." *Id.* at 968. Referencing *Krouse*, we explained in *Rios* that, "[w]hether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities." 449 F.3d at 1012 (citing *Krouse*, 465 F.3d at 968). In our most recent case addressing the "in furtherance" question, *United States v. Mosley*, 465 F.3d 412 (9th Cir. 2006), we reiterated the importance of the factual inquiry. We "decline[d] once again to adopt a checklist approach" to deciding this issue and held that "it is the totality of the circumstances, coupled with a healthy dose of a jury's common sense when evaluating the facts in evidence, which will determine whether the evidence suffices to support a conviction." *Id.* at 418.

**[8]** The lenient standard of review influences our evaluation of the "in furtherance" requirement. In view of the totality of the circumstances presented at Hector's trial, a rational trier of fact could have found that the gun seized from Hector's apartment was used in furtherance of his drug trafficking crime. The apartment, with its closely circumscribed spaces, was the focal point for the sale of drugs. The drugs were found in a bathroom drawer and the loaded Glock .45 caliber handgun was found underneath a futon in the living room. During the controlled drug purchase, Hector went to the rear of the apartment and then brought the drugs to the front door where the sale was conducted. Hector's apartment was small —less than 700 square feet. The law enforcement officer who searched the apartment testified that it would take only four or five seconds to walk from the front door to the farthest point in the living room, the room where Hector kept the gun. In short, the loaded firearm was located directly on the path Hector traveled in conducting the drug transactions.

In granting Hector's motion for acquittal, the district court noted the fact that the gun was not discovered in the same room as the drugs. However, having the firearms and drugs located in the same room is not the bellwether for sufficiency

of evidence. *See id.* ("[W]e have never held that the drugs and guns must be in the same room.").

The district court was also unpersuaded by "[t]he government's argument that the small size of the apartment render-[ed] the gun in close proximity to the drugs." The court explained, "If that were the case, then the mere presence of a gun in a small apartment would always be enough to sustain a § 924(c) violation." There is no denying that by virtue of the small size of Hector's apartment, everything in the apartment could be characterized as in close proximity to everything else. Close proximity in an enclosed setting, however, is not sufficient by itself to sustain a conviction, nor is it the only relevant consideration here. It is possible for a firearm to be proximate yet not easily accessible or strategically placed even in a small apartment. For example, if the gun were not loaded, or if it were locked in a safe with the key kept in a separate location, or if the gun were in a difficult-to-access attic or storage room of the apartment, the importance of proximity would be dissipated. Such circumstances would bring this case closer to *United States v. Mann*, 389 F.3d 869 (9th Cir. 2004). In *Mann*, we held that the relevant nexus was not present:

> The only evidence adduced at trial showed that the guns were not at hand . . . but locked in a safe in a truck, the key was kept in the area of the campsite [where the defendants] slept, and the guns were not easily accessible in an area where drugs were manufactured and stored.

*Id.* at 880. *See also Rios*, 449 F.3d at 1015-16 (holding that any inference of nexus was weakened by the fact that the gun was "hidden and unloaded and no ammunition was found"). Nor could Hector argue here that the gun was secured in a locked place to protect his daughter. *See United States v. Palmer*, 456 F.3d 484 (5th Cir. 2006) (reversing the conviction where Palmer claimed the gun was locked in a safe to

protect the children and ammunition did not match the gun). Ironically, Hector placed the drugs in a boxing glove belonging to his daughter.

**[9]** In this case, as in *Krouse* and *Mosley*, the gun was loaded, within Hector's easy reach, near the entryway where the drugs were sold, and on the path to where the drugs were stored. The fact that the gun was underneath a futon does not make it any less accessible than the firearms found in the defendant's dresser in *Krouse* or the closet in *Mosley*. In *Krouse* and *Mosley*, we held that the firearms were sufficiently accessible to satisfy the "in furtherance" requirement, notwithstanding that they were not in plain view. In light of the evidence, the jury could have concluded that Hector was a drug dealer who sold drugs out of his apartment where the drugs and proceeds were kept in close proximity to a gun. It would not have been unreasonable for a rational juror to have concluded that the gun was easily accessible and "possessed to further the possession and future distribution of . . . narcotics by being available to protect [Hector], his drugs and his drug trafficking business." *Castillo*, 406 F.3d at 817.

**[10]** Viewing all of the evidence in the light most favorable to the government, we cannot say, as we did in *Mann* and *Rios*, that "no rational trier of fact" could find the "in furtherance of" element to be satisfied beyond a reasonable doubt.

**REVERSED.**