**UNITED STATES of America, Plaintiff**

v.

**Noel PORTER, Defendant.**

**Case No. 4:08–CR–00337 BSM.**

United States District Court,
E.D. Arkansas,
Little Rock Division.

Sept. 16, 2009.

Michael S. Gordon, U.S. Attorney's Office, Little Rock, AR, for Plaintiff.

Omar F. Greene, II, Federal Public Defenders Office, Little Rock, AR, for Defendant.

## ORDER

BRIAN S. MILLER, District Judge.

Defendant Noel Porter moves to suppress evidence recovered from his home during the execution of a no-knock search warrant by the Little Rock Police Department and the Little Rock SWAT team. The motion was first argued to the court on September 9, 2009, and the parties were permitted to file supplemental post hearing briefs. The government moved to reopen the hearing to permit additional testimony and a second hearing was held on September 14, 2009. For the reasons set forth below, the motion to suppress is denied.

## I. BACKGROUND FACTS

Detective Willie Thomas, a seventeen year member of the Little Rock Police Department, testified that on February 15, 2007 at approximately 7:00 p.m., he, along with other members of the LRPD, executed a no-knock search warrant on a residence located at 4700 Princeton Drive in Little Rock. The warrant was issued to the officers by a state judge based on an ongoing investigation of drug dealing at the residence. Thomas testified that prior to obtaining the warrant, the police department conducted a number of "controlled buys" in which an informant purchased illegal drugs from persons at the residence.

Thomas testified that the Little Rock SWAT team approached the house and announced who they were and yelled "search warrant" as they entered the house. Upon entry, officers heard a person, later identified as Deshawn Porter, run through the attic, fall through the ceiling into a back bedroom, and then jump through a glass window. Officers pursued Deshawn Porter and caught him after a one block foot chase, during which an officer was injured attempting to jump over a fence. According to Thomas, Mario Hood, Charles James, and Elliot Moton, were found in the living room, and defendant Noel Porter was found in the attic with 48 marijuana plants and a loaded .380 caliber handgun in his pocket. Thomas identified all of the items seized from the home, including guns, ammunition and drugs.

Thomas further stated that the five men at the residence were brought into the living room, handcuffed and supervised by uniformed officers. Thomas sat in an adjacent dining room where police officers brought him items that the officers planned to seize from the residence. He testified that the living room and the dining room were separated only by a sheet that was hung in the doorway. Consequently, while he was working in the dining room, he could hear a discussion in the living room in which at least one of the suspects mentioned whether the officers had a search warrant. Detective Thomas testified that when he heard the suspects discussing the search warrant, he walked into the living room and placed a copy of the search warrant on the coffee table approximately one foot in front of the suspects. He stated that the warrant was placed right side up and that defendant did not ask him to let the defendant read the warrant.

Thomas testified that defendant and Deshawn Porter appeared to be the primary residents of the house and that, at the conclusion of the search, all five men in the house were arrested. Thomas asserted that he followed police department procedure on the day he arrested defendant by placing in defendant's personal property a copy of the warrant and inventory sheets, along with the confiscation reports and orders, and the supplemental seizure

report. He stated that defendant was not allowed to keep his property in jail, and if he had handed defendant the search warrant, it would have been taken away and placed in defendant's personal property. Thomas testified that defendant was released from jail on February 16, 2007, but that he did not know the time of release.

Detective Thomas testified that the Little Rock Police Department sent a letter to defendant on February 16, 2007, notifying defendant that property in his name was being stored. Thomas further stated that defendant picked up his personal property on February 21, 2007.

Defendant testified that, during the time the officers searched the residence, he was handcuffed with his hands behind his back and that he sat between Mario Hood and Charles James on a couch in the living room. He stated that he requested to see the search warrant at least six times but not more than twelve times, but that it was never shown to him. He denied that Thomas ever put the search warrant on the coffee table and stated that the coffee table was approximately three to four feet away from the sofa on which he was sitting. Defendant stated that two officers were stationed in the living room and that three to four officers walked into and out of the room while he was handcuffed, and that he did not feel free to get up and walk around. Defendant testified that the search warrant was not in his personal belongings when he was released from detention at 4:00 p.m. on February 16, 2007. Defendant said that the only personal property returned to him when he was released from detention were two inventory sheets.

Elliot Moton testified that defendant was the only person who requested to see the search warrant.

On September 3, 2008, defendant was charged in a 9–count Indictment, along with Deshawn Porter, with possession of illegal drugs with intent to deliver, manufacturing marijuana, and possession of a firearm in furtherance of a drug trafficking offense, as well as two forfeiture allegations. On October 7, 2008, the government filed a 15–count Superseding Indictment adding Mario Hood and Charles James as defendants and additional possession with intent to deliver counts. Elliot Moton was not charged.

## II. MOTION TO SUPPRESS AND SUPPLEMENTAL MOTION TO SUPPRESS

Defendant's motion to suppress is denied because the Fourth Amendment governs this case, and Detective Thomas was not required by the Fourth Amendment to show defendant the validly obtained search warrant prior to the search. Further, even if the Fourth Amendment required Thomas to show defendant the warrant at some point, under the circumstances, Thomas met this burden by placing the warrant on the coffee table in the living room for defendant to review. Finally, even if the Fourth Amendment was violated, the exclusionary rule should not be applied under these facts.

■ Defendant asserts that he repeatedly asked the officers searching his home for the search warrant and that they did not show him one. He moves to suppress the fruit of the search claiming that the deliberate failure to show him the warrant violated Arkansas Rule of Criminal Procedure 13.3(c) which provides in pertinent part:

> In the course of any search or seizure pursuant to the warrant, the executing officer shall give a copy of the warrant to the person to be searched or the person in apparent control of the premises to be searched. The copy shall be furnished before undertaking the search or seizure unless the officer has reason-

able cause to believe that such action would endanger the successful execution of the warrant with all practicable safety, in which case he shall, as soon as is practicable, state his authority and purpose and furnish a copy of the warrant. If the premises are unoccupied by anyone in apparent and responsible control, the officer shall leave a copy of the warrant suitably affixed to the premises.

Although this court is guided by the Federal Rules of Criminal Procedure and not Arkansas's Rules of Criminal Procedure, Federal Rules of Criminal Procedure 41 does not apply because the warrant was authorized by a state judge and executed by state police officers. *United States v. Schroeder*, 129 F.3d 439, 443 (8th Cir. 1997).

Defendant relies on *Schroeder*, a case from this district, in which the Eighth Circuit Court of Appeals held that evidence may be suppressed when officers executing a search warrant violate Arkansas Rule of Criminal Procedure 13.3, which requires the officers to provide a copy of the warrant to the person in control of the premises, "upon a showing of prejudice or deliberate disregard of the rule." *Id.* at 443–44. The court, in dicta, commented that "a failure to show the warrant to [the defendant] after he asked for it would be a deliberate violation of the rule...." *Id.* at 444. In *Schroeder*, it was "conceded that none of the officers present at the scene of the search ever presented the warrant to the defendant," and "[n]o one testified that there was any danger that might have necessitated withholding the warrant." *Id.* at 443–44. The court remanded the case to determine whether the defendant asked the officers to show him the warrant, and thus, whether the officer's omission was a deliberate one. *Id.* at 444.

Relying on *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998), the government contends that exigent circumstances existed justifying the delay in producing the warrant. In *Moya*, the Arkansas Supreme Court held that a violation of Arkansas Rule of Criminal Procedure 13.3 did not warrant suppression of the evidence when the defendant was present during the search and both he and his attorney received a copy of the search warrant in time to file a motion to suppress the fruits of the search. *Id.* at 205, 981 S.W.2d 521. The court held that exigent circumstances existed during the search, as two men were found upon entry into the house, and a third man was found shortly thereafter flushing plastic bags of drugs down the toilet. *Id.* at 205–06, 981 S.W.2d 521. The court further held that Rule 13.3 was "complied with as soon as practicable" because officers provided a copy of the warrant to a co-resident later that same day. *Id.* at 205–06, 981 S.W.2d 521.

■ While the cases the parties rely on are relevant, they seem to be overshadowed by *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 1607, 170 L.Ed.2d 559 (2008), a fairly recent case decided by the United States Supreme Court. Although the facts in *Moore* are distinguished from the facts in this case because *Moore* involved a warrantless arrest for a crime committed in the presence of an arresting officer and this case involves a warranted search of a residence, the overriding principal of *Moore* is key. The Court held that a "State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id.* at 1606. "[W]hen States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." *Id.* at 1605. "[I]t is not the province of the Fourth Amendment to enforce state law," and "[t]hat Amend-

ment does not require the exclusion of evidence obtained from a constitutionally permissible arrest." *Id.* at 1608.

Indeed, the Eighth Circuit has long held, and recently reaffirmed, that state restrictions do not alter Fourth Amendment analysis in determining whether suppression is warranted in a federal prosecution. *See, e.g., United States v. Banks,* 553 F.3d 1101 (8th Cir.2009) (holding that even if Minnesota law did not authorize custodial arrests for the offense at issue, the motion to suppress would still be denied because state restrictions do not alter the Fourth Amendment's protections); *United States v. Bell,* 54 F.3d 502, 504 (8th Cir. 1995) ("[W]hen a federal court must decide whether to exclude evidence obtained through an arrest, search, or seizure by state officers, the appropriate inquiry is whether the arrest, search, or seizure violated the Federal Constitution, not whether the arrest, search, or seizure violated state law."); *United States v. Maholy,* 1 F.3d 718, 721 (8th Cir.1993) ("In determining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated."); *United States v. Tate,* 821 F.2d 1328, 1330 (8th Cir.1987) ("In a federal prosecution, the legality of a search and seizure is not determined by reference to a state statute, but rather is resolved by fourth amendment analysis."). *But see United States v. Eng,* 753 F.2d 683, 686 (8th Cir.1985) (noting that "under some circumstances, a federal court, under principles of comity, should uphold a suppression motion in a federal trial on the ground that the evidence was seized by state officers who acted in violation of state law").

Relying on *Moore,* several other circuits have recognized that state law does not alter Fourth Amendment analysis. *See, e.g., United States v. Noster,* 573 F.3d 664, 674 (9th Cir.2009) ("[O]fficers who have sufficient probable cause or reasonable suspicion for a search, seizure or arrest for purposes of the Fourth Amendment do not violate a defendant's constitutional rights even if the officer's actions violate state laws."); *United States v. Goings,* 573 F.3d 1141, 1143 (11th Cir.2009) ("[I]t is irrelevant for purposes of the Fourth Amendment whether [defendant's] arrests violated state law, so long as it was supported by probable cause."); *United States v. Turner,* 553 F.3d 1337 (10th Cir.2009) ("[S]tate law does not determine the reasonableness of a seizure under the Fourth Amendment."); *United States v. Sims,* 553 F.3d 580, 585 (7th Cir.2009) (noting that although Illinois law requires that a copy of the warrant be given to the person whose property is searched if he is present, state law does not define federal constitutional requirements); *United States v. Franklin,* 284 Fed.Appx. 266, 269 (6th Cir. 2008) (relying on *Moore* in holding that in federal court, when the Exclusionary Rule is at issue, the only applicable law is the Federal Constitution).

It has generally been assumed over the years that provisions, such as Ark. R.Crim. P. 13.3(c), requiring that a copy of the warrant be exhibited or delivered at the place searched are not grounded in the Fourth Amendment. 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 4.12 (4th ed.2004) (hereinafter, "LaFave, *Search and Seizure* "). For this reason, defendant contends that the Fourth Amendment is not implicated by his motion to suppress based on Rule 13.3(c), but that a niche has been carved out by the Eighth Circuit in *Schroeder* which is not affected by the Supreme Court's ruling in *Moore.* The Supreme Court seems to disagree with this position. *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004); LaFave, *Search and Seizure,* § 4.12. In *Groh,* the Court "indicated the

Fourth Amendment *is* involved in this context but left the extent of the protection afforded by the Amendment largely undefined." LaFave, *Search and Seizure*, § 4.12.

In *Groh,* the Supreme Court held that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." 540 U.S. at 562 n. 5, 124 S.Ct. 1284. It noted, however, that the question of "[wh]ether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when ... an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission" was not presented. *Id.*

In *United States v. Grubbs,* 547 U.S. 90, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006), it appears that the Supreme Court rejected the notion that the premise behind that warrant presentation requirement was to allow individuals to police the officers' conduct. The Court stated, "The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante,* the 'deliberate, impartial judgment of a judicial officer ... between the citizen and the police,' *Wong Sun v. United States,* 371 U.S. 471, 481–82, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and by providing, *ex post,* a right to suppress evidence improperly obtained and a cause of action for damages." *Id.* at 99, 126 S.Ct. 1494.

■ After carefully reviewing the cases cited above, the court finds that the Fourth Amendment, not the Arkansas Rules of Criminal Procedure, controls the search at issue. It is further found that the Fourth Amendment did not require the officers to show defendant the warrant before they searched his home. *United States v. Grubbs,* 547 U.S. 90, 99, 126 S.Ct.

1494, 164 L.Ed.2d 195 (2006) (the Fourth Amendment and Federal Rule of Criminal Procedure 41 do not require the executing officers show the warrant before conducting the search); *United States v. Hepperle,* 810 F.2d 836, 839 (8th Cir.1987) (holding that "law enforcement officials are not constitutionally required to present a copy of the search warrant prior to commencing a search, so long as the previously issued warrant is presented before the officers vacate the premises").

■ The court finds that Thomas's testimony that he showed the warrant to defendant by placing it on the coffee table during the search and by placing a copy in the defendant's personal effects is credible. Thus, even if it is assumed that the Fourth Amendment required the police to provide a copy of a search warrant to defendant at some point; here, the timing and method of providing the warrant was reasonable under the Fourth Amendment.

Defendant asserts that placing the warrant on the coffee table during the search was insufficient because defendant was handcuffed. It is noted, however, that although the no-knock authorization and judge's signature are contained on the second page of the warrant, the first page contains the description of the place to be searched and items to be seized. Additionally, nothing in the record indicates that defendant expressed any concern to the officers that he could not adequately review the warrant, which was, according to Thomas, approximately one foot from defendant.

"Even assuming that the failure to serve a copy of the warrant is a violation of the Fourth Amendment, it may well be ... that 'the exclusionary rule should not be applied' in such circumstances." LaFave, *Search and Seizure,* § 4.12. In *Hudson v. Michigan,* 547 U.S. 586, 599, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), the United

States Supreme Court held that the exclusionary rule does not apply to knock-and-announce violations because "the social costs of applying the rule are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial-incomparably greater than the factors deterring warrantless entries when *Mapp* was decided." The Court also stated that "but-for" causality is a necessary, but not sufficient condition for suppression, noting that "the constitutional violation of an illegal *manner* of entry was not a but-for cause of obtaining the evidence." *Id.* at 592, 126 S.Ct. 2159. "Whether the preliminary misstep had occurred *or not,* the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house." *Id.*

The Court noted that "[t]he exclusionary rule generates 'substantial social costs,' . . ., which sometimes include setting the guilty free and the dangerous at large." *Id.* at 591, 126 S.Ct. 2159 (internal citations omitted). Thus, the Court has been "cautious against expanding" it, and "repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application." *Id.* (internal quotations and citations omitted). The Court has rejected "indiscriminate application" of the rule, and held it to be applicable only "where its remedial objectives are thought most efficaciously served,"—that is, "where its deterrence benefits outweigh its substantial social costs." *Id.* (internal quotations and citations omitted).

In *United States v. Hector,* 474 F.3d 1150, 1154–55 (9th Cir.2007), relying on *Hudson,* the Ninth Circuit held that suppression was not warranted despite the officers' failure to present the warrant to the defendant. There, as in this case, no one disputed that there was a valid search warrant issued by a state court judge on a showing of probable cause; instead, the challenge was focused on whether there was a constitutional right under the Fourth Amendment to be presented with a copy of the search warrant at the time of the search and whether the claimed constitutional violation merited suppression of the seized evidence. *Id.* at 1151. In determining that suppression was not warranted, the court found that regardless of whether the police officers had actually shown the defendant the search warrant, they would have executed it and recovered the drugs and firearms inside his apartment, and thus, the acquisition of the evidence could not be characterized as the "fruit of the fact" that the officers failed to present the warrant. *Id.* at 1155. In fact, the "causal connection between the failure to serve the warrant and the evidence seized [was] highly attenuated, indeed nonexistent." *Id.* Additionally, the interest in heading off breaches of the peace by dispelling any suspicion that the search was illegitimate did not "implicate the seizure of evidence described in the search warrant nor would it be vindicated by suppression of the evidence seized." *Id.* Finally, the Ninth Circuit found that "the social costs of excluding relevant evidence obtained pursuant to a valid search warrant are considerable[,]" while "the deterrent benefit associated with suppressing the evidence is relatively small in the case of failure to present a copy of the warrant." *Id.*

■ Here, as in *Hudson* and *Hector,* the social costs of applying the exclusionary rule are considerable, while the deterrent benefit of suppressing the evidence is relatively small. Defendant does not dispute that the warrant was valid. Even if it is assumed that the Fourth Amendment required Thomas to provide a copy of the warrant to defendant and this requirement

was not complied with, the violation was not a but-for cause of obtaining the evidence. Indeed, whether the officers presented a copy of the warrant or not, the police would have executed the valid warrant and discovered the evidence at issue.

Finally, even if it is accepted that the standard set forth in *Schroeder* applies, defendant has failed to demonstrate deliberate disregard of the rule. Clearly, as the warrant was a "no-knock warrant," providing the warrant beforehand was not possible. As noted above, the court credits the testimony of Thomas. According to Thomas, he showed the warrant to the defendant by placing it on the coffee table as soon as practicable under the circumstances, and placed a copy in defendant's personal effects. Indeed, the testimony of Thomas regarding the guns, ammunition, and drugs, as well as the flight of Deshawn Porter from the house, convinces the court that exigent circumstances existed that led to an excusable delay in showing the warrant to defendant. Thus, suppression is not warranted.

## III. CONCLUSION

For the reasons provided above, defendant Noel Porter's motion to suppress evidence (Doc. No. 71) and supplemental motion to suppress (Doc. No. 77) are denied. Dated this 16th day of September, 2009.