**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

GILBERT L. RIOS, JR., a/k/a Seal C,
a/k/a Gilbert Lopez, Jr.,
            *Defendant-Appellant.*

No. 05-50000

D.C. No.
CR-04-00177-
RSWL-03

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted
March 6, 2006—Pasadena, California

Filed June 2, 2006

Before: M. Margaret McKeown and Marsha S. Berzon,
Circuit Judges, and Samuel P. King,* District Judge.

Opinion by Judge Berzon

---

*The Honorable Samuel P. King, Senior United States District Judge
for the District of Hawaii, sitting by designation.

**COUNSEL**

Jerry D. Whatley, Santa Barbara, California, for the defendant-appellant.

Andrea L. Russi, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

BERZON, Circuit Judge:

Gilbert Rios, Jr. (Rios) was convicted by a jury of seven counts relating to a conspiracy with his father, Gilbert Lopez Rios, Sr. (Rios, Sr.) and his grandmother, Martha Lopez Rios (Martha Rios), to buy prescription drugs with fraudulent prescriptions from the Ar-Ex Pharmacy in Los Angeles and then sell the drugs elsewhere for profit. Rios was convicted of (1) one count of conspiracy to distribute and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; (2) five counts of distribution of controlled substances and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); and (3) one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The drug trafficking crime that Rios was convicted of furthering was the conspiracy crime, 21 U.S.C. § 846.

Rios contends that the evidence produced at trial was not sufficient to convict him of possession of a firearm in furtherance of a drug trafficking crime under § 924(c)(1)(A). We

agree. Rios also appeals his sentence, arguing that the district court erred by failing to grant him a downward adjustment for acceptance of responsibility pursuant to section 3E1.1 of the United States Sentencing Guidelines. Because of our holding on the sufficiency of the evidence claim, we do not reach this issue.[1]

## I.

At trial, the government put on evidence that the Rios family used fraudulent prescriptions to obtain controlled substances from the Ar-Ex Pharmacy and then sold the drugs to third parties. On at least one occasion agents observed the three Rios family members transporting controlled substances from the Ar-Ex Pharmacy to an apartment located at 1440 South Burlington Street in Los Angeles (Burlington apartment). An undercover agent purchased controlled substances from Rios, Sr. at the Burlington apartment on several occasions and testified that Rios was present on at least three of those occasions. When agents later executed search warrants, they found large quantities of controlled substances at the Burlington apartment, in Martha Rios's car, and in bags designated for the Rios family at the Ar-Ex Pharmacy. Agents also discovered large amounts of cash at the Burlington apartment and on all three family members.

---

[1]It appears that at trial Rios challenged only the firearm charge. The fact that Rios contested that charge is no longer a valid reason to deny the downward adjustment, because we reverse that conviction for insufficiency of the evidence. Accordingly, at resentencing the district court can reconsider in light of this opinion its denial of the adjustment for acceptance of responsibility. *See United States v. Fisher*, 137 F.3d 1158, 1167 (9th Cir. 1998).

We further note that Rios was sentenced before *United States v. Booker*, 543 U.S. 220 (2005), so the district court's reconsideration of a downward adjustment for acceptance of responsibility will be in the context of the now-advisory sentencing guidelines. *See id.* at 264.

The firearm possession charge that Rios contests stems from a shotgun that agents found at Rios's residence, a motel suite at the Bell Gardens Inn. Rios's residence is a three-room suite containing a rear bedroom, a bathroom, and a front room divided by a partition into a living area and a bedroom. Rios lived there with his teenage son.

In the front room, agents found approximately one hundred documents related to the conspiracy. These documents included fake driver's licenses, blank prescription forms, completed prescription forms, and a "price list" — a hand-written note listing the prices of controlled substances. Also in the front room was a dresser. During a search of the motel room, an agent discovered an unloaded sawed-off shotgun under the dresser. The agents did not find any ammunition at Rios's residence, nor was there any evidence that drugs were found at that residence.

The motel manager testified that Rios paid his rent in cash and had three to four visitors a week, some of whom arrived around midnight. He further testified that his cleaning staff had never seen drugs in Rios's apartment when they cleaned the unit, which they did periodically.

## II.

### A.

Because Rios preserved his sufficiency of the evidence challenge by making a motion for judgment of acquittal after the close of evidence, we review the denial of the motion de novo. *See United States v. Munoz*, 233 F.3d 1117, 1129 (9th Cir. 2000). In reviewing a sufficiency of the evidence claim, the central inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S.

307, 319 (1979); *see United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004).

**[1]** In relevant part, 18 U.S.C. § 924(c)(1)(A) provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime— (i) be sentenced to a term of imprisonment of not less than 5 years.

To prove that Rios possessed a firearm in furtherance of a drug trafficking crime in violation of § 924(c)(1)(A), the government must show that (1) Rios participated in the conspiracy to traffic in prescription drugs; (2) Rios possessed the firearm; and (3) Rios's possession of the firearm was "in furtherance" of the drug trafficking conspiracy. *See Mann*, 389 F.3d at 879. Rios does not dispute that he participated in the conspiracy and possessed the firearm. He maintains, however, that the evidence was insufficient to satisfy the third factor, that his possession of the firearm was in furtherance of the drug trafficking conspiracy.

**[2]** Two of our cases have addressed whether the evidence was sufficient to support a conviction for possession of a firearm in furtherance of a drug trafficking crime — *Mann* and *United States v. Krouse*, 370 F.3d 965 (9th Cir. 2004).[2] Under

---

[2]In addition, in *United States v. Monzon*, 429 F.3d 1268 (9th Cir. 2005), we addressed whether there was a factual basis for a plea to possession in furtherance of a drug trafficking crime. In *Monzon*, authorities found over two hundred grams of heroin in the defendant's bedroom and a loaded handgun in his bed. *Id.* at 1269. Monzon pleaded guilty to, inter alia, possession of a firearm in furtherance of a drug trafficking crime. *Id.* at 1269-70. On appeal, Monzon argued that the facts that he had a loaded handgun in his bed and over two hundred grams of heroin in his bedroom were not

these cases, mere possession of a firearm by an individual convicted of a drug crime is not sufficient for a rational trier of fact to convict under § 924(c)(1)(A). *See Mann*, 389 F.3d at 879-80; *Krouse,* 370 F.3d at 967. Instead, the government must show that the defendant intended to use the firearm to promote or facilitate the drug crime. *See Krouse,* 370 F.3d at 967. Evidence of this intent is sufficient "when facts in evidence reveal a nexus between the guns discovered and the underlying offense."[3] *Id.* at 968. Whether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities. *See id.* We have declined, however, to permit reliance solely on the nature of the firearms themselves. *See Mann*, 389 F.3d at 880 (holding that the possession of "inherently dangerous" firearms that are "generally lacking in usefulness except for violent and criminal purposes" does not satisfy the 'in furtherance of' element" of § 924(c)(1)(A)).

In *Krouse*, local police officers discovered three loaded firearms, two unloaded firearms, ammunition, 86.5 grams of cocaine, and almost 150 pounds of marijuana in the defendant's home. 370 F.3d at 966, 968 n.4. The firearms were stashed in a dresser in the defendant's home office. *Id.* at 968

---

alone sufficient under Federal Rule of Criminal Procedure 11(b)(3) to establish a factual basis for his plea of guilty to the possession in furtherance charge. *Id.* at 1271. The government conceded that there was no factual basis for the possession in furtherance of a drug trafficking charge. *Id.* at 1271 & n.1. Accordingly, *Monzon* does not inform the inquiry here.

[3]The Fifth Circuit requires consideration of "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000). *Krouse* rejected this multi-factor test as "less helpful in closer, and more common, cases." 370 F.3d at 968.

n.4. A jury convicted the defendant of, inter alia, one count of possession of firearms in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A). *Id.* at 966 n.2. We held that the evidence was sufficient to support the § 924(c)(1)(A) conviction because "[n]o less than five high caliber firearms, plus ammunition, were strategically located within easy reach in a room containing a substantial quantity of drugs and drug trafficking paraphernalia." *Id.* at 968.

In *Mann*, local authorities discovered a methamphetamine lab in a tent at a campsite. 389 F.3d at 872-73. Not long after the search of the campsite had begun, the defendants returned to the campsite in a truck. *Id.* at 873. The authorities searched the truck and discovered a "semi-automatic pistol, a loaded 'pen gun,' ammunition, 30 pseudoephedrine pills, and other drug paraphernalia." *Id.* The firearms were locked inside a safe, the key to which was in a second tent, used for sleeping. *Id.* at 879. A jury convicted the defendants of, inter alia, two counts of possessing a firearm in furtherance of a drug trafficking conspiracy, in violation of § 924(c)(1)(A). *Id.* at 874.

Distinguishing *Krouse*, we held that there was insufficient evidence to support the § 924(c)(1)(A) conviction. *Id.* at 880. Of critical importance was that the firearms in *Mann* were locked inside a safe in the defendants' truck, the key to which was in the tent used for sleeping, not for drug manufacturing, and were therefore not strategically located in or "easily accessible" to an area where "drugs were manufactured and stored," as was the case in *Krouse*. *Id.*

**[3]** The legislative history of § 924(c)(1)(A) provides additional insight into the meaning of the "in furtherance of" language. Before 1998, § 924(c)(1) did not include the "in furtherance of" provision and instead covered only "us[ing] or carr[ying]" a firearm "during and in relation to any . . . drug trafficking crime." 18 U.S.C. § 924(c)(1) (1994), *amended by* 18 U.S.C. § 924(c)(1) (Supp. IV 1998). In 1998, § 924(c)(1) was amended to include possession "in furtherance of" a

crime of violence or a drug trafficking crime. The House Judiciary Committee Report (House Report) on the amendment states that the new language was aimed at including more conduct under the statute than strict "use" or "carrying." H.R. REP. NO. 105-344, at 6 (1997). Nonetheless, the House Report explains that possession "in furtherance of" requires the government to

> clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

*Id.* at 12.

This amendment stemmed, at least in part, from Congress's disapproval of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), which defined "use" to require *active employment* of a firearm. *See id.* at 148-50; H.R. REP. NO. 105-344, at 4-6. While disapproving of the standard set forth in *Bailey* and increasing the reach of the statute, the House Report also used the facts of *Bailey* to discuss the new possession "in furtherance of" standard. Specifically, the House Report noted that the facts relating to one of the defendants in *Bailey* may not meet the requirements of possession "in furtherance of" a drug trafficking crime. H.R. REP. NO. 105-344, at 12. In *Bailey*, police pulled over the defendant for a traffic stop and found cocaine and ammunition in the passenger compartment of his car, as well as a firearm and a large amount of cash in a bag locked in the trunk. *Bailey*, 516 U.S. at 139. The primary evidence tying the firearm to the promotion of a drug crime was an expert who testified that drug dealers often carry firearms to protect their

drugs, money and themselves. *Id.* The Judiciary Committee noted that "[s]tanding on its own, this evidence may be insufficient to meet the 'in furtherance of' test. The government would have to show that the firearm located in the trunk of the car advanced or promoted Mr. Bailey's drug dealing activity." H.R. REP. NO. 105-344, at 12. The House Report then suggested that "additional witness testimony connecting Mr. Bailey more specifically with the firearm" could establish that the firearm was possessed "in furtherance of" the drug crime. *Id.*

## B.

The government presented both general and particularized evidence suggesting that Rios possessed the firearm in furtherance of the drug conspiracy. In light of *Krouse*, *Mann*, and the legislative history of the 1998 amendment, neither type of evidence is independently sufficient in the present case, nor are the two types sufficient when considered together.

[4] As to the general evidence, the government presented testimony regarding the usual use of sawed-off shotguns and the common practices of drug traffickers. One expert stated that "sawing off" a shotgun makes it easier to conceal and control and has no "sporting purpose." As we held in *Mann*, however, mere possession of a firearm recognized as one fit for illegal activity, such as a sawed-off shotgun, does not satisfy the "in furtherance" requirement. *Mann*, 389 F.3d at 880.

[5] Similarly, another expert testified that drug traffickers often use firearms for protection and intimidation in drug trafficking crimes. The House Report's discussion of *Bailey* suggests that such expert testimony alone is not sufficient to establish the weapon was possessed "in furtherance of" the offense. H.R. REP. NO. 105-344, at 12. Nor could it be. Such testimony could be submitted in *any* case in which a drug trafficker possesses a gun, functionally eliminating any independent role for the possession "in furtherance" language. Had

Congress wished to make possession of a gun by a drug trafficker, without more, a crime, it presumably would have done so. *See Mann*, 389 F.3d at 880. We therefore hold that expert testimony that drug traffickers generally use firearms to further their drug crimes, standing alone, is not sufficient to establish that a firearm was possessed in furtherance of a particular drug crime.

**[6]** The government also introduced particularized evidence seeking to establish a connection between the firearm and the drug conspiracy. The government presented no evidence, however, that the firearm was ever present at the pharmacy or at the Burlington apartment, the locations of the known drug activities. Rather, the government attempted to establish that possession of the firearm *at Rios's residence* furthered the drug conspiracy.

**[7]** In furtherance of that position, the government contends, principally, that there was evidence from which an inference can arise that Rios dealt drugs from his apartment. There is, however, no evidence establishing that any drugs were ever present at Rios's residence. No drugs were found there during the search, nor did the motel staff see any drugs in the unit when they cleaned. Furthermore, Rios was never seen transporting drugs into or out of his motel room.

**[8]** Maintaining that there was nonetheless sufficient evidence that Rios dealt drugs from his apartment, the government argues, first, that the fact that Rios had three to four visitors per week, some of whom came late at night, suggests he was dealing drugs. It is, however, hardly unusual to have that number of visitors at one's home, nor can one infer — especially beyond a reasonable doubt — that a few visitors around midnight indicate that drugs were being sold at that location.

**[9]** The government next contends that the presence of the drug-related documents suggested that Rios was dealing drugs

from his home. Although the contention in the brief was broader, at oral argument the government conceded that the "price list" for prescription drugs is the only paperwork found at the motel room arguably relevant to the question of whether drugs were present at, or dealt from, the apartment. The other documents pertain to the acquisition of drugs through fraudulent prescriptions and indicate nothing about the location of the drugs once acquired, or of drug sales. A single document listing prices for controlled substances is not sufficient evidence that Rios actually dealt drugs from his residence, as opposed to from elsewhere. Nor does the price list in any other way support the required inference that the firearm was possessed in furtherance of the drug crime.

**[10]** Finally, the government argues that the fact that Rios paid his rent in cash and was found with $2013 on his person suggests he sold drugs at his residence. Rios was a drug dealer, so he was likely to have a great deal of cash. The presence of cash on his person does not, however, illuminate where Rios dealt the drugs or otherwise indicate a connection between the drugs and the gun. In sum, there simply was not sufficient evidence to support the conclusion that Rios was dealing drugs from his home and that possession of the gun was in furtherance of that activity.

**[11]** The government also contends that even if there is insufficient evidence to establish that Rios dealt drugs from his residence, the firearm's proximity to the *conspiracy documents* is sufficient to establish the requisite nexus. There was substantial evidence that many documents found in Rios's apartment were part of the conspiracy to buy and sell prescription drugs and that the firearm was in close proximity to the documents needed to carry out the conspiracy. The record, however, in no way suggests that Rios intended to use the firearm to protect the conspiracy documents or to intimidate others into staying away from the motel room, or otherwise possessed the firearm to further the conspiracy. No court of appeals has held that even close proximity between a firearm

and a collateral product of a drug trafficking crime, such as prescription drug paperwork, satisfies the requisite nexus.[4] That the gun in this instance was hidden and unloaded and no ammunition was found in the apartment makes any inference that the gun was possessed to protect the documents all the weaker. Without further evidence of a nexus between the firearm and the conspiracy documents, we cannot hold that the presence of the documents in the apartment provides sufficient evidence of possession of the firearm "in furtherance of" a drug trafficking crime.

[12] In sum, no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Here, as in *Mann*, the firearm was not readily accessible to Rios when he would have been involved in drug conspiracy activities for which possession of a gun would be useful. The firearm was unloaded and hidden under a dresser in a drug-free residence that was in another

---

[4]*See, e.g.*, *United States v. Lomax*, 293 F.3d 701, 706 (4th Cir. 2002) (holding that there was sufficient evidence when, inter alia, the defendant was found running down the street with a loaded semiautomatic pistol in his hands and nineteen packaged hits of crack on his person); *United States v. Wahl*, 290 F.3d 370, 376-77 (D.C. Cir. 2002) (holding that there was sufficient evidence when, inter alia, a loaded, illegally possessed gun was within defendant's reach and in close proximity to defendant's drug stash and a small amount of money); *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002) (holding that there was sufficient evidence when agents found a "bullet proof vest, crack cocaine on the stove and under the cushions of the couch, two fully loaded firearms on top of the oven and ammunition inside the oven in the living room of [the defendant's] apartment"); *United States v. Mackey*, 265 F.3d 457, 459, 462-63 (6th Cir. 2001) (holding that there was sufficient evidence when the defendant was found with 2.3 grams of crack on his person, and an illegally possessed loaded shotgun, scales, and razor blades were found in the house from which the defendant sold drugs); *Ceballos-Torres*, 218 F.3d at 411, 415 (holding that there was sufficient evidence when, inter alia, the defendant had an illegally possessed handgun lying on his bed, 569.8 grams of cocaine in a hidden compartment of his closet, $1360 in cash which tested positive for cocaine in the pocket of a leather jacket, and tools for sniffing narcotics in the kitchen).

part of town from the locus of the drug activities. The firearm was not locked away, as it was in *Bailey* and *Mann*, although it was hidden, somewhat like in *Krouse*. The firearm, however, was found far from the locus of drug activities, unlike *Krouse*. Therefore, the presence of the firearm in Rios's residence does not make it any more "strategically located" than the firearm in the trunk of the car in *Bailey* or the several firearms in the locked safe in the truck in *Mann*. Furthermore, the presence of a firearm in some proximity to collateral products of a drug crime but far from the locus of drug activities does not establish the requisite nexus.

Were we to subscribe to the government's theory that the facts presented here are sufficient, we would render possession in furtherance and mere possession nearly indistinguishable. Any person involved in a drug conspiracy who happens to have a weapon at home, for whatever purpose, could be convicted under § 924(c)(1)(A). This outcome, however, is precisely what the House Report, *Krouse*, and *Mann* caution against.

**[13]** For the foregoing reasons, we **REVERSE** Rios's conviction under 18 U.S.C. § 924(c)(1)(A), **VACATE** his sentence, and **REMAND** for resentencing.