**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

SOMKHIT THONGSY,
            *Defendant-Appellant.*

No. 08-30198

D.C. No.
1:07-cr-30023-PA

OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, District Judge, Presiding

Argued and Submitted
May 5, 2009—Portland, Oregon

Filed August 17, 2009

Before: William A. Fletcher, Carlos T. Bea, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

Robert M. Stone (briefed and argued), Medford, Oregon for the defendant-appellant.

Karen J. Immergut (briefed), Judith R. Harper (briefed and argued), Medford, Oregon for the plaintiff-appellee.

## OPINION

IKUTA, Circuit Judge:

Somkhit Thongsy challenges his jury conviction for possession of a firearm in furtherance of a felony under 18 U.S.C.

§ 924(c). Thongsy argues that the evidence adduced at trial was insufficient to prove he possessed a firearm because he was asleep, no firearm was on his person, and he shared a tent with two others. Thongsy also argues that, even if he possessed a firearm, the evidence was insufficient to prove he possessed it in furtherance of the underlying illegal marijuana operation. Finally, Thongsy argues that the district court gave an improper jury instruction because the court stated the jury could convict him if it found he possessed a firearm "during and in relation to the crime," as opposed to "in furtherance of" the crime. Because the evidence presented was sufficient to convict Thongsy, and because the district court's error in formulating the jury instruction was harmless, we affirm.

I

In the spring of 2007, Drug Enforcement Administration agents located a marijuana farm on 160 acres of private land in the remote Wolf Creek area of southern Oregon. After conducting surveillance, agents determined the farm was a sophisticated commercial operation. They raided the property at dawn on July 31, 2007, discovering a camp area hidden under heavy foliage seven to ten feet from the marijuana plants. In a tent at the camp, DEA Special Agent Williams observed three individuals in close quarters. The individual sleeping in the middle, later identified as Thongsy, had a .45 caliber semi-automatic pistol lying on his sleeping bag at waist level, within reach.

Agents removed Thongsy and the two other individuals, Vichean Bun and Thomas Sujadee, from the tent. The agents found a loaded rifle located near Bun's feet, as well as a fanny pack near his head containing a loaded .38 caliber pistol and two fully loaded ammunition magazines. Another loaded semi-automatic pistol was found underneath Sujadee. The area inside the tent was small enough that each individual had easy access to any of the weapons. Clothing seized from the tent included a camouflage shirt. The pocket of that shirt con-

tained a magazine fitting the gun found next to Thongsy. Video footage recovered from cameras that had been placed around the site one week before the raid showed Thongsy tending the farm's watering system while wearing the shirt. Agents ultimately seized 8,918 marijuana plants from the farm. At the campsite, agents also seized drying marijuana, fertilizer, irrigation equipment, gardening tools, food, trash, utensils, a pesticide sprayer, fuel containers, and a propane burner.

Thongsy was indicted by a grand jury on August 3, 2007, for violations of 21 U.S.C. § 846 (conspiracy to manufacture marijuana); 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii) (manu-facture of marijuana); and 18 U.S.C. § 922(g)(5) (alien ille-gally in the United States in possession of a firearm). On March 7, 2008, the grand jury added a fifth and sixth count to the indictment: being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession of a firearm in furtherance of a felony in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(i).[1]

During the course of a two-day trial in March 2008, DEA Agent Wright testified that large-scale marijuana farms, like the one in this case, are run by organized groups. He also tes-tified that firearms are regularly found at the farms to protect the marijuana crop and that neither the rifle (which had been altered for use as an assault rifle) nor the pistols seized from the campsite would be used for hunting. Wright testified that the marijuana plants at the farm had a value of approximately $6.6 million.

---

[1]18 U.S.C. § 924(c)(1)(A) and (B)(i) provide, in pertinent part, that: "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sen-tenced to a term of imprisonment of not less than 5 years . . . ."

Toward the end of trial, Thongsy moved for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure[2] on Count 6, possession of a firearm in furtherance of a felony. The district court denied the motion.[3] Thongsy also proposed the following jury instruction on Count 6:

> Merely possessing a firearm contemporaneously with manufacture of marijuana is insufficient to establish possession in furtherance of a drug trafficking offense. There must be some specific evidence that the possession furthers the underlying offense.

The district court rejected this formulation in favor of a jury instruction based on Ninth Circuit Model Instruction No. 8.65. Specifically, the district court delivered the following instruction:

> In count 6 of the indictment, the defendant is charged with carrying a firearm during and in relation to a drug trafficking crime. For the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt: First, the defendant committed conspiracy to manufacture marijuana, or manufacture of marijuana, or both, as charged in counts 1 and 2 of the indictment;
>
> Second, the defendant knowingly carried a firearm; and

---

[2]Fed. R. Crim. P. 29(a) states, in pertinent part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

[3]Thongsy also moved for judgment of acquittal on Count 4, alien illegally in the United States in possession of a firearm. The district court granted that motion, because the government did not meet its burden of showing Thongsy was in the United States illegally.

Third, the defendant carried and/or possessed the firearm during and in relation to the crime.

A person possesses a firearm "in relation to the crime" if the firearm facilitated or played a role in the crime.

The jury convicted Thongsy of Count 6, as well as three other counts. On appeal, Thongsy argues that the district court erred by denying his motion for judgment of acquittal as to Count 6, and that the court also erred by giving an improper jury instruction on that count.

## II

We review de novo the district court's denial of Thongsy's motion for judgment of acquittal under Rule 29(a). *United States v. Hartz*, 458 F.3d 1011, 1023 (9th Cir. 2006). We must affirm the conviction "if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each element" of the crime charged. *United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004) (internal quotation marks and alteration omitted).

We also review de novo the question whether a trial court's jury instruction omitted or incorrectly described an element of the offense. *See United States v. Kaur*, 382 F.3d 1155, 1157 (9th Cir. 2004). We apply harmless error analysis to an error involving improper instructions on an element of the offense. *Neder v. United States*, 527 U.S. 1, 8 (1999).

## III

[1] We first consider Thongsy's argument that the evidence adduced at trial was insufficient to prove he possessed a firearm.[4]

---

[4]The government argues that a plain error standard of review applies to this challenge because Thongsy raises the issue for the first time on appeal. While the record is not entirely clear, we conclude that Thongsy raised this issue at trial.

"Possession under § 924(c)(1) can be shown through either constructive or actual possession." *United States v. Krouse*, 370 F.3d 965, 966 n.3 (9th Cir. 2004) (citing *United States v. Lott*, 310 F.3d 1231, 1247 (10th Cir. 2002)). A defendant has actual possession of an item "if the person knows of its presence *and* has physical control of it, or has the power and intention to control it." *United States v. Cain*, 130 F.3d 381 (9th Cir. 1997) (internal quotation marks omitted). The definition of constructive possession is similar. "A person has constructive possession when he or she knowingly holds ownership, dominion, or control over the object and the premises where it is found." *Lott*, 310 F.3d at 1247 (internal quotation marks omitted); *see also United States v. Saddler*, 538 F.3d 879, 888 (8th Cir. 2008). The government can prove actual or constructive possession using circumstantial evidence alone. *United States v. Bernard*, 48 F.3d 427, 430 (9th Cir. 1995).

**[2]** Here, evidence adduced at trial showed that Thongsy resided in a tent at a campsite containing marijuana processing and cultivation equipment, worked on the adjacent marijuana farm, slept with a firearm close at hand, and wore a shirt with a magazine in the pocket that matched the firearm. Viewing the evidence in the light most favorable to the government, a rational juror could have found beyond a reasonable doubt that Thongsy had knowledge and control of the firearm. The firearm need not have been in Thongsy's hand or on his person, *see Krouse*, 370 F.3d at 968 (holding that sufficient evidence supported a conviction under § 924(c) when firearms "were strategically located within easy reach in a room containing a substantial quantity of drugs and drug trafficking paraphernalia"), nor is it availing that Thongsy shared a tent with two cohorts, *cf. United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001) (holding in the context of a felon in possession conviction that there was sufficient evidence to establish constructive possession by driver of car where gun and shells were found under passenger's seat, because evidence suggested driver knew of the items and they

were within easy reach); *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (holding same where gun was found on husband's side of a closet shared with wife).

**[3]** Thongsy next argues that, even if he "possessed" the firearm for purposes of § 924(c)(1), there was insufficient evidence that the possession was "in furtherance of" the underlying crime. The question whether possession of a firearm is "in furtherance" of a crime is a "fact-based inquiry into the nexus between possession of the firearm and the drug crime." *United States v. Hector*, 474 F.3d 1150, 1156 (9th Cir. 2007). To determine whether the requisite nexus exists, we consider "the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities." *Id.* at 1157 (citing *Krouse*, 370 F.3d at 968 (internal quotation marks omitted)). We have held that such a nexus is present where a firearm is "easily accessible or strategically placed" in an area used as a focal point for drug operations. *Id.* at 1158; *see also United States v. Mosley* 465 F.3d 412, 417-18 (9th Cir. 2006) (holding sufficient nexus was established when firearms were found in a closet and on a shelf at the entrance to a house even though the kitchen was the locus of drug production).

**[4]** Relying on our decisions in *Mann*, 389 F.3d at 878, and *United States v. Rios*, 449 F.3d 1009, 1012 (9th Cir. 2006), Thongsy claims the government failed to show a sufficient nexus between the firearm and the underlying crime because the focal point of the drug operation was the marijuana farm, not the tent, and the government presented no evidence that the firearm at issue was present in the immediate area of the farm. We disagree. In *Mann*, firearms were found in a locked safe in a truck, the key to the truck was in a different location from the drugs, and the truck was not immediately accessible. 389 F.3d at 879. In *Rios*, police found an unloaded sawed-off shotgun at the residence of a drug dealer, but no indication that drug sales were taking place at that residence. 449 F.3d at 1014-15. In each of those cases, we held that there was an insufficient nexus between the firearm and the underlying

crime. *Mann*, 389 F.3d at 880; *Rios*, 449 F.3d at 1016. But unlike the residence in *Rios*, the tent here was an integral part of the drug operation. It was located in a work camp just a few feet from the marijuana farm, and it sheltered individuals who worked at the farm. Nor was the firearm inaccessible, as in *Mann*. Rather, it was found within Thongsy's easy reach, giving rise to the ready inference that the firearm was strategically located to protect Thongsy, his cohorts, and the $6.6 million marijuana operation. *See Hector*, 474 F.3d at 1158 (holding possession of firearm for protection was "in furtherance of" underlying drug business). Accordingly, the evidence was sufficient to show the requisite nexus between the firearm and the drug operation, and a rational jury could find beyond a reasonable doubt that Thongsy's possession of the firearm was "in furtherance of" the drug crime. Therefore, the evidence adduced at trial was sufficient to convict Thongsy of violating § 924(c).

## IV

**[5]** Finally, Thongsy argues that the jury instruction did not fairly and adequately cover the elements of possession of a firearm in furtherance of a drug crime because it required the jury to find that he "carried and/or possessed the firearm during and in relation to the crime" instead of requiring the jury to find that he possessed the firearm "in furtherance of" the crime. We have established that § 924(c) makes criminal a single offense that can be proven in two ways. *See United States v. Arreola*, 467 F.3d 1153, 1159 (9th Cir. 2006). We explained the distinction in *Arreola*:

> What the statute proscribes as conduct in the first clause is the use or carrying of a gun during (a temporal connection) and in relation to (a substantive connection) a predicate crime. What the statute proscribes in the second clause is possessing a gun in furtherance of (with a particular purpose of advancing) the specified crime.

*Id.* Here, the district court conflated the two clauses of § 924(c) by instructing the jury that it could convict Thongsy if it found that he "possessed" a firearm (part of the second clause) "during and in relation to the crime" (part of the first clause).

The government argues that, even though the instruction required the jury to find that Thongsy possessed the firearm "during and in relation to the crime" instead of "in furtherance of" the crime, the instruction was adequate because the court also stated: "A person possesses a firearm 'in relation to the crime' if the firearm facilitated or played a role in the crime." Although we have not held that a defendant possesses a firearm "in furtherance" of a crime if the firearm merely "played a role" in the crime, the government contends that a firearm that played a role in a drug crime would necessarily facilitate that crime.

**[6]** We disagree. As a general rule, a firearm that "played a role" in a drug crime would likely also be "in furtherance of" that crime. *See United States v. Gonzalez*, 528 F.3d 1207, 1213 (9th Cir. 2008) (holding that, where an armed border patrol agent possessed marijuana with intent to distribute and the firearm "emboldened" him and "lent him an air of legitimacy," evidence was sufficient to convict the agent of possession of the firearm "in furtherance of" the crime under § 924(c)); *see also Mann*, 389 F.3d at 880 ("We recognize that persons . . . engaged in criminal activities . . . will frequently carry weapons to protect their enterprise."). Nevertheless, in an unusual case, a defendant might unknowingly or accidentally have a firearm at the scene of a drug transaction. If such a firearm, upon discovery by other participants, disrupted or stopped the transaction from proceeding, and the defendant never intended his possession of the firearm to be in furtherance of the crime, then the firearm could be said to have played a role in the crime without also furthering the crime. *See Gonzalez*, 528 F.3d at 1212-13 (indicating that § 924(c) is not violated if the presence of a firearm was the

result of accident or coincidence). Because the court's instruction stated the jury could find Thongsy guilty if Thongsy possessed a firearm that merely "played a role in the crime," as opposed to "in furtherance of" the crime, we conclude that the instruction was incorrect.[5] *See United States v. Nobari*, ___ F.3d ___, 2009 WL 2195345, *11 (9th Cir. July 24, 2009) (holding that the district court erred by confusing the two separate clauses of § 924(c)).

**[7]** The instructional error, however, was harmless in this case. An error in misdescribing or omitting an element of the offense in a jury instruction is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18 (1999). Here, the evidence demonstrating Thongsy used the pistol to facilitate the criminal activity was overwhelming. The evidence demonstrated Thongsy's involvement in a large, sophisticated, and highly lucrative criminal marijuana enterprise. Agent Williams testified that organized groups frequently run such enterprises, that firearms are frequently used by the groups for protection, and that Thongsy's pistol would not be used for hunting. Under these circumstances, no rational juror could have found the firearm "played a role in the crime," without also finding that it facilitated the crime. *See United States v. Lopez*, 100 F.3d 98, 104-05 (9th Cir. 1996)*; accord United States v. Smith*, 561 F.3d 934, 941 (9th Cir. 2009) (en banc). Because the evidence showing Thongsy possessed the firearm in furtherance of the

---

[5]Ninth Circuit Model Jury Instruction 8.65, which the district court followed in part, does not correctly set forth the elements of § 924(c). In particular, the instruction does not track the language in § 924(c) that makes it unlawful to possess a firearm "in furtherance of" a drug crime. Instead, the instruction invites error by allowing a judge to instruct a jury that the relevant offense involves possessing a firearm "during and in relation to the crime." Model Jury Instruction 8.65 thus should be revised to clarify there are two ways to prove an offense under § 924(c): the defendant either (1) used or carried a firearm "during and in relation to" a crime or (2) possessed a firearm "in furtherance of" a crime.

drug crime was overwhelming, *see Neder*, 527 U.S. at 17, and because Thongsy "did not, and apparently could not," *Id.* at 19, introduce evidence to negate this element (for example, that he unknowingly or accidentally had the firearm with him in the tent), the district court's error was harmless.

V

In sum, because the evidence adduced at trial was sufficient to convict Thongsy under 18 U.S.C. § 924(c), the district court did not err by denying Thongsy's motion for judgment of acquittal. Although the jury instruction given by the district court was incorrect, the error was harmless because it is clear beyond a reasonable doubt that a rational jury would have found Thongsy guilty absent the error. Accordingly, Thongsy's conviction is **AFFIRMED**.