**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

ROBERT LEWIS NORWOOD,
   *Defendant-Appellant.*

No. 08-30050

D.C. No.
CR-06-00091-LRS

ORDER AND
AMENDED
OPINION

On Remand From The United States Supreme Court

Filed February 17, 2010
Amended April 1, 2010

Before: Thomas M. Reavley* Richard C. Tallman, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Thomas M. Reavley, Senior United States Circuit
Judge for the Fifth Circuit, sitting by designation.

**COUNSEL**

Robert J. Pfister and Andrew B. Brettler, Simpson Thacher & Bartlett LLP, Los Angeles, California, for the defendant-appellant.

James A. McDevitt and K. Jill Bolton, United States Attorney, Spokane, Washington, for the plaintiff-appellee.

**ORDER**

The opinion filed on February 17, 2010 is amended as follows:

On slip opinion page 2510, the first sentence of the second paragraph at Headnote [4] is deleted, and replaced with the following: "In sum, we are convinced beyond any reasonable doubt on the basis of all the remaining evidence adduced at trial that the jury would have convicted Norwood on the elements of the possession with intent to distribute offense regardless of the challenged affidavit."

With this amendment, the panel has unanimously voted to deny the petition for panel rehearing. Judges Tallman and M. Smith have voted to deny the petition for rehearing en banc, and Judge Reavley has so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc are DENIED. No further petitions for rehearing may be filed.

---

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

In this appeal, Defendant-Appellant Robert L. Norwood challenges his jury conviction for possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Norwood claims violation of his Sixth Amendment right to confront his accuser and violation of his due process rights both in trial and at sentencing. Norwood also claims that the evidence was insufficient to convict him for possession of a firearm in furtherance of a drug trafficking crime.

We affirmed Norwood's conviction and sentence in *United States v. Norwood*, 555 F.3d 1061 (9th Cir. 2009). The matter is again before us on remand from the United States Supreme Court. The Court vacated our earlier opinion and remanded for reconsideration of Norwood's Confrontation Clause claim in light of *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). We again affirm Norwood's conviction and sentence.

### FACTUAL AND PROCEDURAL BACKGROUND

In April of 2006, police responded to a domestic violence call in Spokane, Washington. Upon entering the home, the police encountered Norwood in the bedroom lying on his bed. They smelled marijuana, and asked Norwood to step outside. In response to police questioning, Norwood admitted he had "just smoked a joint," but denied having any other drugs in the bedroom. The officers then arrested Norwood, and while

searching him discovered 0.86 grams of crack cocaine and over $2500 dollars in his pockets.

After obtaining a warrant, the police searched Norwood's home and vehicle. In the car, police found $7000 in cash, separated into $1000 tightly wrapped bundles. In the bedroom, the police discovered two baggies containing a total of 7.7 grams of cocaine base and a digital scale dusted with drug residue underneath the dresser next to the bed. Police also found a wood box containing several "marijuana blunts," or butts of marijuana joints. In the closet, police found 42.4 grams of harvested marijuana in an ice cream box. Between the mattress and the box spring of the bed, police found a 25 caliber semiautomatic handgun. The police did not find any other drug paraphernalia.

On August 2, 2007, Norwood was indicted in federal district court on three counts: (1) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); (2) possessing cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; and (3) possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The government eventually dismissed the first count and proceeded to trial on the second and third counts. Norwood made a Federal Rule of Criminal Procedure 29 motion to dismiss at the close of the government's case, another at the close of the defendant's case, and still a third following trial, each of which was denied.

As part of its case-in-chief, the government presented an affidavit prepared by Jodi Arndt, an employee at the Washington Department of Employment Security, which certified that "a diligent search of the department's files failed to disclose any record of wages reported for [Norwood] from January 1, 2004 through March 31, 2007." Although Arndt did not appear in person to testify, the court admitted her affidavit as circumstantial evidence that Norwood had no legal source for

the large amounts of cash that were found on his person and in his car.

During closing argument, Norwood's counsel argued to the jury that the drugs found in Norwood's apartment were for personal use, and suggested that Norwood had been smoking the crack through the marijuana blunts that were found on the scene, but which had not been seized or tested. The prosecutor responded to the defense's comments as follows: "When we talk about those blunts, yeah, it would have been real nice if the police got those. The police didn't get those, but they admitted that, but you know what, the defendant didn't tell them that he was smoking the marijuana with the crack cocaine." The defense immediately objected and moved for a mistrial on the basis that Norwood's right to silence had been violated. The district court sustained the objection and directed the jury not to consider the prosecution's comment. The court denied the motion for a mistrial.

On October 31, 2007, the jury returned a verdict of guilty on both counts. The district court sentenced Norwood to 120 months in prison for Count 2 and 60 months for Count 3, to run consecutively. Norwood appealed to this court.

## STANDARD OF REVIEW

Norwood alleges that his Sixth Amendment right to confront his accusers was violated when the district court admitted into evidence a written affidavit without requiring the affiant to testify on the stand. We review admission of a declarant's out-of-court statements de novo to test for possible violations of the Confrontation Clause. *Lilly v. Virginia*, 527 U.S. 116, 137 (1999). If a constitutional violation has occurred, we then review for harmless error. *Chapman v. California*, 386 U.S. 18, 21-22 (1967).

Norwood also alleges that the prosecution's reference to the fact that he had not spoken with police officers regarding pos-

sible use of cocaine in the marijuana blunts violated his due process rights. We review a claim that the prosecution's comment has violated the defendant's right to silence de novo. *United States v. Bushyhead*, 270 F.3d 905, 911 (9th Cir. 2001). If the prosecution's comment is determined to be improper, we then apply harmless error review. *Id.*

Finally, Norwood argues that the evidence was insufficient to convict him on the count of possession of a firearm in furtherance of a drug trafficking crime. When the defendant has moved for a judgment of acquittal after the close of evidence, this court reviews denial of the motion de novo. *United States v. Rios*, 449 F.3d 1009, 1011 (9th Cir. 2006). We will not overrule a conviction if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## DISCUSSION

### A.  Claimed Violation of Norwood's Sixth Amendment Rights

**[1]** The Sixth Amendment of the U.S. Constitution guarantees an accused the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court has interpreted this right to apply to out-of-court statements as well as in-court testimony. *Crawford v. Washington*, 541 U.S. 36, 50-51 (2004). As the Court summarized in *Crawford*, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59.

**[2]** The Supreme Court has yet to define the full extent to which rights under the Confrontation Clause are applicable to testimonial and nontestimonial statements. However, in

*Melendez-Diaz*, the Court provided additional guidance, concluding that "certificates of analysis" verifying the identity of a contraband chemical substance are testimonial under *Crawford*. 129 S. Ct. at 2531, 2532. Quoting *Crawford*, the Court explained that the "certificates of analysis" (which are "quite plainly affidavits") are "incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact" and "functionally identical to live, in-court testimony." *Id.* (internal quotation marks omitted). Accordingly, *Melendez-Diaz* held that such affidavits are inadmissible unless the affiant testifies at trial, or is unavailable at trial but had earlier been available for cross-examination. *Id.*

In this case, the government concedes that under *Melendez-Diaz*, Washington Department of Employment Security Assistant Records Officer Jodi Arndt's affidavit, prepared for use at Norwood's trial to prove the absence of any record of Norwood having legitimate employment, should not have been admitted without Arndt presenting herself at trial for examination.

**[3]** In light of the government's concession that admission of Arndt's affidavit violated Norwood's Sixth Amendment rights, we must remand for a new trial unless the government demonstrates beyond a reasonable doubt that admission of the evidence was harmless. *Chapman,* 386 U.S. at 24.

> Whether such an error is harmless in a particular case depends upon a host of factors . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Under the circumstances of this case, the government has met its burden. Unlike the affidavit in *Melendez-Diaz*, the affidavit in this case was not offered to prove an element of the offense, nor was it the *sole* evidence of any relevant fact. Rather, the testimony provided by the disputed affidavit was not particularly important to the case, and was cumulative.

Specifically, the affidavit was offered to prove the lack of any record that Norwood had legitimate employment that might explain his possession of $7,000 in cash stored in separate rolls of $1,000, bundled in duct tape, in the center console of his vehicle, and another $2,531 in cash on his person.

The amount of cash and Norwood's method of storing it strongly suggest that the money did not derive from a legitimate source. Further, the jury heard evidence from Norwood's girlfriend that he rarely left the house during the day, did not receive paychecks from any regular employment, and that his only job involved occasional cleaning of rental units. Thus, Norwood's girlfriend's testimony established the same fact as the disputed affidavit—that Norwood did not have any sort of job that would have led to employment records with the state—making the affidavit merely cumulative. Thus, although the government relied on the affidavit in arguing to the jury that the cash could not have derived from a legitimate source, the government could have made precisely the same argument based on the testimony of Norwood's girlfriend. Accordingly, the district court's admission of the affidavit, and the government's reliance on it, were harmless.

Other physical evidence suggested that Norwood was in the drug distribution business. The smell of marijuana greeted the officers when they arrived at Norwood's house in response to the domestic disturbance call. Norwood admitted to smoking marijuana, and the police found two bags of marijuana in the house. When the police found him, Norwood was lying on his bed in his home. A loaded 25-caliber handgun was found under his mattress. A tray bearing Norwood's fingerprints

was found under the nightstand next to Norwood's side of the bed. On that tray were an electronic scale with traces of cocaine on it, as well as baggies of crack cocaine. Bundles of crack cocaine were also found on Norwood's person when he was searched incident to his arrest.

**[4]** In sum, we are convinced beyond any reasonable doubt on the basis of all the remaining evidence adduced at trial that the jury would have convicted Norwood on the elements of the possession with intent to distribute offense regardless of the challenged affidavit. *Cf. United States v. Larson*, 495 F.3d 1094, 1108 (9th Cir. 2007) (en banc) (concluding that a Confrontation Clause error was harmless beyond any reasonable doubt where other evidence established defendant's participation in drug conspiracy).

## B. Claimed Violation of Norwood's Due Process Rights at Trial and Sentencing

Norwood charges that his due process rights were violated both at trial and at sentencing. First, he argues that comments made by the prosecution during closing arguments violated his Fifth Amendment right to silence. Second, he argues that the allegedly arbitrary sentencing distinction between crack and powder cocaine violates the Due Process Clause of the Fifth Amendment as well as the Eighth Amendment prohibition against cruel and unusual punishment. We address these arguments in turn.

The Fifth Amendment protects a defendant's right to remain silent by assuring that "silence will carry no penalty," and that the prosecution cannot use a defendant's silence to imply guilt. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). As acknowledged by this court, "[t]he privilege against self-incrimination prevents the government's use at trial of evidence of a defendant's silence — not merely the silence itself, but the circumstances of that silence as well." *Bushyhead*, 270 F.3d at 913.

**[5]** However, where "the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel," there is no Fifth Amendment violation. *United States v. Robinson*, 485 U.S. 25, 32 (1988). In *Robinson*, the defense counsel argued several times in his closing argument that the government had denied Robinson the opportunity to explain his actions. *Id.* at 27. The prosecutor responded by indicating that Robinson could have explained himself by testifying. The Supreme Court ruled that Robinson's Fifth Amendment Rights were not thereby infringed because this response did not "treat the defendant's silence as substantive evidence of guilt," but rather answered the defense's claim that Robinson's trial was unfair. *Id.* at 31-32.

**[6]** Similarly, in this case, the prosecutor merely responded to Norwood's implication of investigative misconduct. Defense counsel implied that there was no evidence that Norwood had used crack cocaine only because the police had failed to test the box of marijuana blunts. The prosecutor's comment was made to defend the police officers' decision not to test the marijuana blunts, not to suggest that Norwood's silence was substantive evidence of his guilt.

**[7]** We will not reverse a lower court's conviction " 'when a prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as the basis for conviction, and is followed by a curative instruction.' " *United States v. Smith*, 282 F.3d 758, 769 (9th Cir. 2002) (quoting *United States v. Tarazon*, 989 F.2d 1045, 1051 (9th Cir. 1993)); *see also United States v. Foster*, 985 F.2d 466, 468 (9th Cir. 1993) (recognizing that "there is no *Doyle* violation if the district court promptly sustains a timely objection to a question concerning post-arrest silence, and gives a curative jury instruction"). In this case, the prosecution's allegedly violative comment was a single incident in closing argument, and as indicated above, served primarily to refute an implied claim of investigative carelessness. The district court immedi-

ately sustained Norwood's objection to the comment and provided a curative instruction. If any error existed on this record, it was harmless. Based on these facts, we affirm Norwood's conviction.

The Fifth Amendment also guarantees a defendant the right to due process at sentencing. Norwood argues that his sentence, authorized by 21 U.S.C. § 841(b), is cruel and unusual in violation of the Eighth Amendment and based on an arbitrary distinction that violates the Due Process Clause of the Fifth Amendment. *See Chapman v. United States*, 500 U.S. 453, 465 (1991). Norwood acknowledges that we have previously addressed this issue in *United States v. Harding*, 971 F.2d 410 (9th Cir. 1992). However, he raises the issue in this appeal because "[n]o issue in the world of federal sentencing has sparked more controversy or engendered more criticism than the punishment scheme for crack and powder cocaine." Steven L. Chanenson & Douglas A. Berman, *Federal Cocaine Sentencing in Transition*, 19 FED. SENT. R. 291 291 (2007).

**[8]** Under our precedents, Norwood must show that there is not even a debatable basis for the distinction between crack and powder cocaine in order to successfully challenge Congress' statutory distinction between these two forms of cocaine base. *Harding*, 971 F.2d at 413 (citing *United States v. Carolene Prods. Co.,* 304 U.S. 144, 154 (1938)). He has failed to do so.

In his brief, Norwood cites a series of Special Reports to Congress provided by the Sentencing Commission for the past thirteen years. Although these reports indicate that some of the alleged differences between crack and powder cocaine cited by Congress in 1986 have been scientifically disproven, the reports still suggest that the two forms have distinctive qualities and that there are reasons for treating the two forms differently. *See* United States Sentencing Commission, 2007

REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2007).

**[9]** As Norwood himself seems to acknowledge, in a case such as this it is the role of Congress to alter the relevant statutes, and we remain bound by the statutes currently in effect so long as Congress has a debatable rationale for preserving its rational-basis distinction. Norwood has also failed to provide any persuasive rationale for why his sentence should be considered cruel and unusual under the Eighth Amendment. Accordingly, we affirm Norwood's sentence.

## C.   Sufficiency of the Evidence

The standard of review for sufficiency of the evidence to support a criminal conviction is well established. The Supreme Court has long advised that a reviewing court is not required to determine

> whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson*, 443 U.S. at 319 (internal citation omitted).

To obtain a conviction under § 924(c)(1), the government must show that the defendant's possession of the firearm was "in furtherance" of his drug crime. *United States v. Lopez*, 477 F.3d 1110, 1115 (9th Cir. 2007). As we noted in *Rios*, 449 F.3d at 1013, § 924(c)(1) was amended in 1998 to employ the provision that the firearm be possessed "in furtherance of" the drug trafficking crime. This amendment superceded the previous standard that the offender "use or carry" a firearm "during and in relation to any . . . drug traf-

ficking crime." 18 U.S.C. § 924(c)(1) (1994), *amended by* 18 U.S.C. § 924(c)(1) (Supp. IV 1998). The amendment sought to broaden the scope of § 924(c)(1) to include more conduct than actually using or carrying the weapon during the course of the drug trafficking offense. H.R. REP. NO. 105-344, at 6 (1997). *See also Rios*, 449 F.3d at 1013-14 (detailing the reasons behind the alteration, including Congress's disapproval of *Bailey v. United States*, 516 U.S. 137 (1995) (defining "use" to require active employment of a firearm)).

**[10]** However, "mere possession of a firearm by an individual convicted of a drug crime is not sufficient for a rational trier of fact to convict" under § 924(c)(1). *Rios*, 449 F.3d at 1012. A conviction is only supported by sufficient evidence when the facts "reveal a nexus between the guns discovered and the underlying offense." *United States v. Krouse*, 370 F.3d 965, 968 (2004). To prove this nexus, the government must "illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity." *Id.* at 967 (quoting H.R. REP. NO. 105-334, at 12 (1997)). Expert testimony indicating that drug traffickers "generally use firearms to further their drug crimes" is not sufficient. *Rios*, 449 F.3d at 1014.

In cases where the underlying drug offense is possession with intent to distribute, the government has provided adequate evidence of a nexus between the firearm and the drug crime by showing that the firearm is in the same room and "within easy reach" of a "substantial quantity of drugs and drug trafficking paraphernalia." *Krouse*, 370 F.3d at 968; *see also Lopez*, 477 F.3d at 1115 ("Because Lopez's drug crime was possession of cocaine with intent to distribute, evidence establishing the ready accessibility of the gun while he was in possession of a distributable amount of cocaine satisfied the 'in furtherance' requirement."). In this case, while the quantity of drugs is smaller and the circumstances establishing a nexus are not as clear as those in *Krouse* or *Lopez*, we cannot say that "[no] rational trier of fact could have found the essen-

tial elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

**[11]** The gun at issue in this case was found by the police only a few feet from evidence that the jury found sufficient to establish Norwood's possession of cocaine with intent to distribute conviction. Specifically, the police found a digital scale, on which drug residue and Norwood's fingerprints were found, and 7.7 grams of cocaine packaged in two "eight ball" sizes, which both parties stipulated is a commercial amount that could be sold on the street. In addition, the police first discovered Norwood lying on top of the mattress where the gun was hidden, with over $2500 dollars in his pocket, along with a smaller amount of cocaine, which witnesses testified could still be considered a commercial amount. Given this evidence, we affirm the district court's ruling that "a reasonable jury could infer that [Norwood] possessed the firearm in furtherance of the trafficking of crack, specifically to protect himself and his business." Order Den. Mot. For J. of Acquittal, *United States v. Norwood,* No. 06-091, (E.D. Wash. 2007).

**AFFIRMED.**