**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JAN 06 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10044 |
| Plaintiff-Appellant, | D.C. No. 2:15-cr-00231-KJD-CWH-1 |
| v. | |
| ROBERT LAFON, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted December 12, 2016
San Francisco, California

Before: HAWKINS, BERZON, and MURGUIA, Circuit Judges.

The Government appeals the district court's grant of Robert Lafon's motion

to suppress physical and testimonial evidence obtained as a result of a vehicle stop

conducted by Las Vegas Metropolitan Police Department (Metro) officers. We

affirm.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

We review the district court's reasonable suspicion determination *de novo*, but review "findings of historical fact for clear error and giv[e] 'due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

1.      Reasonable suspicion to stop an individual exists if, in light of the totality of the circumstances, the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Edwards*, 761 F.3d 977, 982 (9th Cir. 2014) (quoting *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014)). We assume, as the magistrate judge found, that the anonymous 911 tip was reliable, as the tipster repeated the information in person to Metro Officer Charles Yannis upon his arrival on the scene.

The tip alone did not, however, provide reasonable suspicion to stop Lafon. Although Lafon had been observed with a gun in his car, it is legal under Nevada law to carry a gun in a car as long as the gun is not loaded. *See* Nev. Rev. Stat. § 503.165. Hypodermic needles may be purchased over the counter in Nevada, *see* Nev. Rev. Stat. § 454.480, and are frequently used for legal and vitally important health maintenance activities, such as injection of insulin by diabetics. Sleeping in a car is not a dangerous activity and can occur for many innocent reasons.

"[E]ven when factors considered in isolation from each other are susceptible to an innocent explanation, they may collectively amount to a reasonable suspicion." *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Here, however, they do not.

The tipster provided no report of having seen or heard of any controlled substances or drug paraphernalia, and he provided no information about whether or how Lafon had used the needle. Nor does considering the gun together with the rest of the tip tend to strengthen an inference of illicit drug use. Presence of a gun might be relevant to an inference of drug trafficking, but nothing in the tip suggested any drug trafficking activity. *Cf. United States v. Norwood*, 603 F.3d 1063, 1072 (9th Cir. 2010) (discussing the insufficiency of "[e]xpert testimony indicating that drug traffickers 'generally use firearms to further their drug crimes'" in 18 U.S.C. § 924(c)(1) prosecutions (quoting *United States v. Rios*, 449 F.3d 1009, 1014 (9th Cir. 2006))). Unlike 911 emergency calls from drivers who reported their cars had been run off the highway by dangerous driving, *see Navarette*, 134 S. Ct. at 1690–91, or shot at by a man on the street, *see Edwards*, 761 F.3d at 984–85, a 911 call about a man sleeping in a car with a needle and a gun does not describe "conduct [that] bears . . . great . . . resemblance to

3

paradigmatic manifestations of" an ongoing and dangerous criminal activity, *see id.* (quoting *Navarette*, 134 S. Ct. at 1691).

All things considered, the tip alone did not provide "reasonable suspicion of an ongoing and dangerous crime." *See Edwards*, 761 F.3d at 984.

2.      If the tip alone had provided a reliable report of an ongoing and dangerous criminal activity, police corroboration of criminal aspects reported in a reliable tip may not have been necessary. *See Navarette*, 134 S. Ct. at 1691; *see also Edwards*, 761 F.3d at 984 (describing the fourth *Navarette* factor). Here, however, the tip alone did not support reasonable suspicion to stop Lafon, so we also consider the information Yannis obtained in his investigation preceding the stop.

Yannis's investigation detracted from, rather than added to, the weak inferences of possible criminal activity that might be drawn from the tip. Upon Yannis's arrival at the scene, the 911 caller told him in person that the Lexus had recently driven off towards the back of the complex. When Yannis located the Lexus on the opposite side of the complex, Lafon was not "passed out." Rather, Lafon had driven, parked, and exited the vehicle. Yannis did not report seeing any signs of impairment. These observations tended to dispel any reasonable inferences that may have been drawn regarding an acute drug overdose or other medical

4

emergency and further weakened the already weak inferences of recent illegal drug possession.

3.     The only other fact the Government offered to support reasonable suspicion was Yannis's belief that the apartment complex where Lafon had been parked was a "hot spot" for criminal activity. We assume the "hot spot" term in this case designates a localized "high-crime" area. "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Still, citing "an area as 'high-crime' requires careful examination by the court" of officer testimony and "a fair and forthright evaluation of the evidence." *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc).

The district court noted Yannis's "belief that the apartment complex was a 'hot spot' of crime." Yannis testified that he based the characterization on "calls for service," but a higher number of calls for the area may simply reflect that the apartment complex was high-density housing stock in a low-density area. As no

actual information underlying the "hot spot" designation was proffered in this case, the designation was entitled to minimal weight.[1]

In light of the totality of the circumstances, we agree with the district court that Metro lacked reasonable suspicion to stop Lafon's vehicle.

**AFFIRMED.**

---

[1] We note that Yannis related a set of inconsistent accounts on several matters, including whether the area was a "high-crime" area, which weakened any inferences that could be drawn from his testimony.